# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

NAGRAVISION SA,                     §     Civil Action No. 4:15-cv-00403
                                    §
    Plaintiff,                     §
                                    §
vs.                                 §
                                    §
ZHUHAI GOTECH INTELLIGENT           §
TECHNOLOGY CO. LTD;                  §
GOTECH INTERNATIONAL                §
TECHNOLOGY LTD.;                     §
GLOBALSAT INTERNATIONAL             §
TECHNOLOGY LTD.; and                §
DOES 1-12,                          §
                                    §
    Defendants.                    §

## PLAINTIFF NAGRAVISION'S MEMORANDUM
## IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

HAGAN NOLL & BOYLE, LLC
Chad M. Hagan (attorney-in-charge)
Texas Bar #24036700
S.D. Tex. Bar #36439
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone:  (713) 343-0478
Facsimile:  (713) 758-0146
chad.hagan@hnbllc.com

Timothy M. Frank (of counsel)
Texas Bar #24050624
S.D. Tex. Bar #614705
timothy.frank@hnbllc.com

Attorneys for Plaintiff Nagravision SA

## TABLE OF CONTENTS

I.     STATEMENT OF THE CASE.................................................................1

II.    STATEMENT OF THE ISSUE..............................................................1

III.   SUMMARY OF THE ARGUMENT ......................................................2

IV.   ARGUMENT AND AUTHORITIES ......................................................3

       A.     Default Judgment Should Be Granted On Counts I-III Of The Amended Complaint...........................................................................................3

            1.     Defendants' IKS Service Violates The DMCA And FCA .........................4

            2.     Defendants' Unauthorized Receivers Violate The DMCA And FCA.........6

       B.     Statutory Damages Should Be Awarded To Nagravision ......................8

       C.     Defendants' Unauthorized Receivers Should Be Impounded And Destroyed ......13

       D.     Nagravision Should Be Awarded A Permanent Injunction ...................14

            1.     Nagravision Is Suffering Irreparable Harm That Will Not Be Corrected With Monetary Damages Alone.................................................14

            2.     The Balance of Hardships And Public Interest Favor Injunctive Relief.................................................................................................16

            3.     The Permanent Injunction Must Be Sufficient To Prevent Defendants From Violating Nagravision's Rights....................................17

V.    CONCLUSION...................................................................................20

i

# TABLE OF AUTHORITIES

## Cases

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.,*
    878 F.2d 806 (5th Cir. 1989) ...........................................................................14

*Apple Computer, Inc. v. Franklin Computer Corp.,*
    714 F.2d 1240 (3d Cir. 1983) ................................................................... 16-17

*Arista Records, LLC v. Tkach,*
    122 F. Supp. 3d 32 (S.D.N.Y. 2015)..............................................................19

*Aspen Tech., Inc. v. M3 Tech., Inc.,*
    569 F. App'x 259 (5th Cir. 2014) ...................................................................16

*Autodesk, Inc. v. Flores,*
    2011 WL 337836 (N.D. Cal. Jan. 31, 2011) ..................................................13

*Blizzard Entm't, Inc. v. Reeves,*
    2010 WL 4054095 (C.D. Cal. Aug. 10, 2010)..............................................8-9

*Cadence Design Sys., Inc. v. Avant! Corp.,*
    125 F.3d 824 (9th Cir. 1997) ..........................................................................16

*China Cent. Television v. Create New Tech. (HK) Ltd.,*
    No. 2:15-cv-01869-SVW-AJW (C.D. Cal. May 31, 2016) ........................ 19-20

*Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,*
    843 F.2d 600 (1st Cir. 1988)...........................................................................16

*DirecTV, Inc. v. Hendrix,*
    2005 WL 757562 (N.D. Cal. Apr. 1, 2005) ...................................................10

*DirecTV, Inc. v. Huynh,*
    503 F.3d 847 (9th Cir. 2007) ............................................................................4

*DirecTV, Inc. v. Webb,*
    545 F.3d 837 (9th Cir. 2008) ............................................................................4

*DISH Network L.L.C. v. Bagdasaryan,*

No. 2:09-cv-03351-RBL-PLA (C.D. Cal. Dec. 16, 2010) ..................................................9

*DISH Network L.L.C. v. Bender,*

No. 3:11-cv-00312-bbc (W.D. Wis. Aug. 24, 2011) ...........................................................9

*DISH Network L.L.C. v. Bolanos,*

2012 WL 5896599 (C.D. Cal. Nov. 21, 2012) .............................................................5, 20

*DISH Network LLC v. Dillion,*

2012 WL 368214 (S.D. Cal. Feb. 3, 2012) ..........................................................15, 16, 19

*DISH Network L.L.C. v. Dillion,*

No. 3:12-cv-00157-CAB-KSC (S.D. Cal. Oct. 15, 2012) ....................................10, 13, 19

*DISH Network L.L.C. v. Noxon USA, Inc.,*

No. 8:14-cv-01876-DOC-AN (C.D. Cal. Sept. 21, 2015) .............................................7, 13

*DISH Network L.L.C. v. Ramirez,*

2016 WL 3092184 (N.D. Cal. June 2, 2016) .....................................................................5

*DISH Network L.L.C. v. Sonicview USA, Inc.,*

2012 WL 1965279 (S.D. Cal. May 31, 2012) .........................................3-4, 7-8, 10, 13, 18

*DISH Network L.L.C. v. Ward,*

No. 8:08-cv-590-T-30TBM (M.D. Fla. Jan. 8, 2010) ...........................................................9

*DISH Network L.L.C. v. Whitcomb,*

No. 3:11-cv-0333 W (RBB) (S.D. Cal. July 18, 2011) ................................................10, 13

*Dolman v. Agee,*

157 F.3d 708 (9th Cir. 1998) ...........................................................................................11

*EchoStar Satellite L.L.C. v. Global Techs., Inc.,*

No. 2:07-cv-05897-JZ-PLA (C.D. Cal. Nov. 5, 2010) ...................................................7, 11

*EchoStar Satellite LLC v. Viewtech, Inc.,*

2011 WL 1522409 (S.D. Cal. Apr. 20, 2011) .....................................................7, 10-11, 18

iii

*Fl. Businessmen v. City of Hollywood,*

    648 F.2d 956 (5th Cir. 1981) ........................................................................14

*Gardner v. City of Houston,*

    2013 WL 4042022 (S.D. Tex. Aug. 6, 2013) ..................................................14

*Harris County, Texas v. CarMax Auto Superstores, Inc.,*

    177 F.3d 306 (5th Cir. 1999) ........................................................................14

*James v. Frame,*

    6 F.3d 307 (5th Cir. 1993) ............................................................................1

*Lakedreams v. Taylor,*

    932 F.2d 1103 (5th Cir. 1991) ......................................................................16

*Macrovision v. Sima Prods, Corp.,*

    2006 WL 1063284 (S.D.N.Y. Apr. 20, 2006)................................................15

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*

    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................. 16-17

*Nexon Am. Inc. v. Kumar,*

    2012 WL 1116328 (C.D. Cal. Apr. 3, 2012) ..................................................9

*Nishimatsu Constr. Co. v. Houston Nat'l Bank,*

    515 F.2d 1200 (5th Cir. 1975) ......................................................................1

*N.L.R.B. v. Express Publ'g Co.,*

    312 U.S. 426 (1941)......................................................................................17

*Orantes-Hernandez v. Thornburgh,*

    919 F.2d 549 (9th Cir. 1990) ........................................................................17

*Peer Int'l Corp. v. Pausa Records, Inc.,*

    909 F.2d 1332 (9th Cir. 1990) ......................................................................11

*Sony Computer Entm't Am., Inc. v. Filipiak,*

    406 F. Supp. 2d 1068 (N.D. Cal. 2005) ........................................................11

*Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.,*

220 F.3d 650 (5th Cir. 2000) ...................................................................................16

*Tracfone Wireless, Inc. v. Pak China Group Co.,*

843 F. Supp. 2d 1284 (S.D. Fla. 2012) ...................................................................12

*Tracfone Wireless, Inc. v. SND Cellular, Inc.,*

715 F. Supp. 2d 1246 (S.D. Fla. 2010) ...................................................................11

*Universal City Studios, Inc. v. Reimerdes,*

111 F. Supp. 2d 294 (S.D.N.Y. 2000)........................................................................3

*Valley v. Rapides Parish Sch. Bd.,*

118 F.3d 1047 (5th Cir. 1997) .................................................................................14

**Rules**

Fed. R. Civ. P. 55.........................................................................................................2

Fed. R. Civ. P. 65.......................................................................................................17

**Statutes**

17 U.S.C. § 1201...........................................................................................................3

17 U.S.C. § 1203.................................................................................... 8, 10, 13-14, 17

47 U.S.C. § 605..................................................................................3-5, 8, 10, 13-14, 17

In accordance with Federal Rule of Civil Procedure 55(b)(2), Plaintiff Nagravision SA ("Nagravision") respectfully moves the Court to grant default judgment against Defendants Zhuhai Gotech Intelligent Technology Co. Ltd. ("Zhuhai Gotech"), Gotech International Technology Ltd. ("Gotech"), and Globalsat International Technology Ltd. ("Globalsat," and together with Zhuhai Gotech and Gotech, "Defendants") on all counts in Nagravision's first amended complaint.

## I.  <u>STATEMENT OF THE CASE</u>

Defendants operate a network of computer servers that illegally capture and rebroadcast Nagravision's control words or "keys" to end users that have purchased Defendants' unauthorized receivers, thereby enabling these end users to circumvent Nagravision's security technology and watch copyrighted television programming provided by Nagravision's customers without paying the necessary subscription fees.  Defendants' actions violate the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(2), and the Federal Communications Act ("FCA"), 47 U.S.C. §§ 605(e)(4) and 605(a), as alleged in Counts I-III of Nagravision's amended complaint.  Defendants failed to respond to the amended complaint despite being properly served, and therefore the Clerk entered their defaults.  For the reasons below, default judgment is now appropriate.

## II.  <u>STATEMENT OF THE ISSUE</u>

The issue to be decided is whether default judgment should be entered against Defendants, who have failed to participate in any manner in this case, and the damages and equitable relief that should be awarded to Nagravision.  Default judgment is properly entered by the Court if the well-pleaded factual allegations in the complaint, which are taken as being true, establish the liability of Defendants.  *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  Nagravision must also establish its damages, which may be awarded by the Court without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

### III.   SUMMARY OF THE ARGUMENT

Defendants defaulted by failing to respond to or otherwise defend this action despite being properly served with Nagravision's amended complaint.  (*See* Dkts. 18-19, 24.)  The Court entered default against Gotech and Globalsat on February 1, 2016, and against Zhuhai Gotech on June 14, 2016.  (*See* Dkts. 22, 27.)  Defendants were served with Nagravision's applications for entry of default and the Court's orders entering default.  (*See* Declaration of Timothy Frank ¶¶ 3, 5.)  The requirements for default judgment in Fed. R. Civ. P. 55(b)(2) are met because Defendants are not minors, incompetent, or exempt under the Servicemembers' Civil Relief Act.  (*See id.* ¶ 6.)

The Court should now enter default judgment on Counts I-III of the amended complaint because Nagravision's well-pleaded allegations demonstrate that Defendants violated the DMCA, 17 U.S.C. § 1201(a)(2), and FCA, 47 U.S.C. §§ 605(e)(4) and 605(a).  Defendants violated these statutes by operating an Internet key sharing ("IKS") service that provides Nagravision's control words or "keys" to end users that purchased one of Defendants' unauthorized receivers, thereby enabling the users to circumvent Nagravision's security technology and receive the pay-television broadcasts of Nagravision's customers in Latin America without paying the required subscription fee.  Separately, Defendants violated the DMCA and FCA by manufacturing and importing similar unauthorized receivers (branded under a different name) to the United States, which are designed for and used for circumventing Nagravision's security technology that protects the broadcasts of DISH Network, which is Nagravision's pay-television customer in the United States.

The Court should award Nagravision statutory damages for each of Defendants' violations of the DMCA.  Statutory damages under the DMCA range between $200 and $2,500 per violation. The statutory damages available for Defendants' violations of the FCA are much greater, ranging from $10,000 to $100,000 for each violation.  Nagravision requests minimal statutory damages of $200 per violation under the DMCA, based only on those violations that can be established from the limited evidence available in this case due to the default of Defendants.  The statutory damages requested by Nagravision are therefore reasonable and conservative.  Nagravision also requests a

permanent injunction to prevent Defendants from continuing to provide products and services that circumvent Nagravision's security technology and steal the copyrighted television programming broadcast by customers of Nagravision.

## IV.    ARGUMENT AND AUTHORITIES

### A.    Default Judgment Should Be Granted On Counts I-III Of The Amended Complaint

Counts I-III of Nagravision's amended complaint assert claims under section 1201(a)(2) of the DMCA and sections 605(e)(4) and 605(a) of the FCA.  (Am. Compl. ¶¶ 31-45.)  The DMCA makes it unlawful to offer to the public, provide, or otherwise traffic in a technology, service, or part thereof that satisfies any one of three criteria:  (1) it is designed or produced for circumventing a measure that effectively controls access to a copyrighted work; (2) it has only limited commercial purpose or use other than circumventing an access control measure; or (3) it is marketed by the defendant or someone acting in concert for use in circumventing an access control measure.  17 U.S.C. § 1201(a)(2).  To circumvent an access control measure "means to descramble a scrambled work, to decrypt an encrypted work, or to otherwise avoid, bypass, remove, deactivate, or impair a technological measure."  *Id.* § 1201(a)(3)(A).  An encryption-based security system, such as that provided by Nagravision, is an effective access control measure for purposes of the DMCA.  *See, DISH Network L.L.C. v. Sonicview USA, Inc.*, No. 09-cv-1553-L(WVG), 2012 WL 1965279, at *8 (S.D. Cal. May 31, 2012);[1] *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 318 (S.D.N.Y. 2000) (holding that security measures based on "encryption or scrambling" are deemed effective under the DMCA).

Section 605(e)(4) of the FCA is similar and makes it unlawful for a person to distribute or assemble equipment "knowing or having reason to know" that it "is primarily of assistance in the unauthorized decryption of … direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a)."  47 U.S.C. § 605(e)(4).  Subsection (a), in turn, provides that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign

---

[1]All unreported cases and declarations cited in this memorandum are located in the Appendix.

communication by radio and use such communication … for his own benefit or for the benefit of another not entitled thereto." *Id.* § 605(a). Satellite television broadcasts, like those provided by Nagravision's customers, constitute direct-to-home satellite services under section 605(e)(4), and protected radio communications for purposes of subsection (a). *See Sonicview*, 2012 WL 1965279, at *10; *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008); *DirecTV, Inc. v. Huynh*, 503 F.3d 847, 852-53 (9th Cir. 2007).

1.     **Defendants' IKS Service Violates The DMCA And FCA**

Nagravision adequately pleads a claim under the DMCA by alleging that Defendants have been operating an IKS service. (*See* Am. Compl. ¶¶ 17-18, 21-27.) Defendants' IKS service is centered on the unauthorized harvesting and distribution of Nagravision's control words. (*See id.*) Defendants transmit Nagravision's control words from their servers in the United States over the Internet to end users that have purchased one of Defendants' Globalsat, AZAmerica, or NAZABox brand receivers, thereby enabling the users to circumvent the Nagravision security technology and watch copyrighted programming provided by Nagravision's customers in Latin America without paying the required subscription fee. (*See id.*) Defendants' IKS service, and the underlying IKS server technology, is primarily designed and produced for circumventing the Nagravision security technology and has no legitimate commercial purpose or use. (*See id.* ¶¶ 32-34.) By offering and providing this IKS service and IKS server technology to their end users, Defendants are engaging in violations of section 1201(a)(2) of the DMCA. (*See id.*)

Nagravision also pleads a claim under the FCA by alleging that Defendants have assembled IKS servers by, among other things, installing control word sharing software that authenticates end users, functions as a cache by storing Nagravision control words, and a front end by transmitting Nagravision control words from the cache to end users requesting the control word through their unauthorized receiver. (*See id.* ¶¶ 24-27.) Defendants' IKS servers and the control word sharing software installed on those servers are primarily of assistance in decrypting without authorization direct-to-home satellite broadcasts of television programming protected by Nagravision's security

4

technology.  (*See id.* ¶¶ 38-39.)  Defendants' distribution of the control word sharing software and assembly of IKS servers violates section 605(e)(4) of the FCA.  (*See id.*)  Defendants' operation of the IKS service also violates section 605(a) of the FCA because it assists end users in receiving Nagravision's control words and satellite broadcasts of television programming protected by the Nagravision security technology without authorization.  (*See id.* ¶ 43.)

Accordingly, Nagravision's well-pleaded allegations, which are accepted as true, establish that Defendants violated the DMCA and FCA by creating and operating their IKS service.  *See DISH Network L.L.C. v. Bolanos*, No. CV 12-03097 DSF (OPx), 2012 WL 5896599, at *1-2 (C.D. Cal. Nov. 21, 2012) (entering default judgment and permanent injunction upon finding defendant that operated an IKS server violated the DMCA); *see also DISH Network L.L.C. v. Ramirez*, No. 15-cv-04712-BLF, 2016 WL 3092184, at *3-4 (N.D. Cal. June 2, 2016) (entering default judgment and permanent injunction upon finding that defendant's sale of passcodes used for accessing an IKS service violated the DMCA and FCA).

Nagravision's allegations are also supported by evidence showing Defendants did in fact create and operate this IKS service.  Nagravision acquired data from servers supporting the IKS service as part of the discovery previously authorized by this Court.  (*See* Dkt. 11; Declaration of Pascal Metral ¶ 13.)  Nagravision analyzed several IKS servers and identified the software running on those servers.  (*See* Metral Decl. ¶ 13.)  Certain software files were configured such that an alert message was sent to specified email addresses in the event the IKS server malfunctioned.  (*See id.*) The email addresses that received this alert, each having the domain portion "@gotechcn.com," correspond with employees of Defendant Zhuhai Gotech.  (*See id.* ¶¶ 13-14.)  Several other email addresses associated with employees of Defendants were also located in source code archived from the IKS servers.  (*See id.* ¶ 14.)  And, the access credentials for certain IKS servers are specific to Defendants, further showing that Defendants are responsible for the IKS servers.  (*See id.* ¶ 15.)

Nagravision also analyzed several of Defendants' Globalsat, AZAmerica, and NAZABox receivers.  (*See id.* ¶ 20.)  The Globalsat, AZAmerica, and NAZABox receivers contain multiple

components that demonstrate the receivers are designed and produced by Defendants for purposes of circumventing the Nagravision security technology, including proprietary Nagravision code and other decryption technology of Nagravision.  (*See id.* ¶¶ 20-24, 26.)  Also, the IP addresses of IKS servers supporting the IKS service described above are hardcoded in the factory-installed firmware found on Defendants' unauthorized receivers.  (*See id.* ¶ 27.)  The fact that Defendants' receivers are pre-configured with these IP addresses – which are in essence the coordinates for accessing the IKS service – demonstrates that Defendants control the IKS service.  (*See id.*)

In summary, Defendants violated section 1201(a)(2) of the DMCA, and sections 605(e)(4) and 605(a) of the FCA, by creating and operating their IKS service, as set forth in Counts I-III of Nagravision's amended complaint.

**2.     Defendants' Unauthorized Receivers Violate The DMCA And FCA**

Nagravision alleges that Defendants also violated the DMCA and FCA by manufacturing Limesat and Captiveworks receivers and importing these products to the United States.  (*See* Am. Compl. ¶¶ 28-30.)  Defendants' Limesat and Captiveworks receivers are capable of circumventing Nagravision's security system and receiving the satellite television broadcasts of DISH Network without authorization, which is Nagravision's pay-television customer based in the United States. (*See id.* ¶ 28.)  Limesat and Captiveworks receivers, like Defendants' Globalsat, AZAmerica, and NAZABox receivers discussed above, have several components that are instrumental in decrypting satellite broadcasts protected by Nagravision's security technology and whose presence within the receivers cannot otherwise be justified, including proprietary code and decryption technology used in the Nagravision security system.  (*See id.* ¶¶ 29-30.)

Defendants violated section 1201(a)(2) of the DMCA by manufacturing, importing, and distributing their Limesat and Captiveworks receivers because the products are primarily designed and produced to circumvent Nagravision's security technology and have only limited commercial purpose or use other than circumvention.  (*See id.* ¶¶ 32-34.)  Further, Defendants violated section 605(e)(4) of the FCA because their Limesat and Captiveworks receivers are primarily of assistance

in decrypting without authorization direct-to-home satellite broadcasts of television programming protected by Nagravision's security technology.  (*See id.* ¶¶ 38-39.)  Section 605(a) of the FCA is also violated because Defendants' Limesat and Captiveworks receivers assist end users to acquire Nagravision's control words and intercept satellite broadcasts of television programming protected by the Nagravision security technology.  (*See id.* ¶ 43.)  Altogether, Nagravision's well-pleaded allegations, which are accepted as true, establish that Defendants violated the DMCA and FCA by manufacturing, importing, and distributing Limesat and Captiveworks receivers.

The infringing nature of Defendants' Limesat and Captiveworks receivers is also supported by technical analysis.  Nagravision's allegations above regarding the piracy-only components and capabilities of Limesat and Captiveworks receivers flow directly from its analysis of the products. (*See* Metral Decl. ¶¶ 20-26.)  Other federal courts have relied upon this same type of analysis in finding the distribution of unauthorized receivers with features similar to Defendants' Limesat and Captiveworks receivers violates the DMCA and FCA.  *See Sonicview*, 2012 WL 1965279, at *3-5, 7-11 (granting summary judgment for Nagravision's customer, DISH Network, and holding that "Sonicview receivers … are products used to circumvent security measures and their distribution constitutes a violation of the DMCA and FCA"); *EchoStar Satellite LLC v. Viewtech, Inc.*, No. 07-cv-1273 BEN (WVG), 2011 WL 1522409, at *1-2 (S.D. Cal. Apr. 20, 2011) (granting summary judgment and permanent injunction as to Viewsat receivers); *EchoStar Satellite L.L.C. v. Global Techs., Inc.*, No. 2:07-cv-05897-JZ-PLA, Dkt. 279 (C.D. Cal. Nov. 5, 2010) (granting summary judgment and permanent injunction as to Pansat receivers); *DISH Network L.L.C. v. Noxon USA, Inc.*, No. 8:14-cv-01876-DOC-AN, Dkt. 43 (C.D. Cal. Sept. 21, 2015) (granting default judgment and permanent injunction with respect to the Dreamlink T5 receiver).

Overall, Defendants manufactured, imported, and distributed Limesat and Captiveworks receivers in violation of section 1201(a)(2) of the DMCA, and sections 605(e)(4) and 605(a) of the FCA, as set forth in Counts I-III of Nagravision's amended complaint.

**B.      Statutory Damages Should Be Awarded To Nagravision**

The DMCA allows Nagravision to recover statutory damages for each violation of section 1201(a)(2) "in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service." 17 U.S.C. § 1203(c)(3)(A).  The FCA also authorizes an award of statutory damages for each violation of section 605(e)(4); however, the range of permissible statutory damages is much higher – $10,000 to $100,000 per violation.  *See* 47 U.S.C. § 605(e)(3)(C)(i)(II), (e)(4); *Sonicview*, 2012 WL 1965279, at *12 ("Section 605(e)(4) is violated by each distribution of a piracy device.").

There are two separate components to Nagravision's request for statutory damages because Defendants' wrongful conduct harmed Nagravision in two independent ways.  The first centers on Defendants having created and operated an IKS service within the United States that allowed users of Defendants' Globalsat, AZAmerica, and NAZABox receivers to circumvent the Nagravision security technology that protects the broadcasts of Nagravision's pay-television customers based in Latin America.  Through the limited discovery authorized by the Court, Nagravision obtained connection traffic for 3 of these IKS servers that Defendants' end users accessed to illegally obtain Nagravision's control words and circumvent the Nagravision security technology.  (*See* Metral Decl. ¶ 16.)  The connection traffic establishes that at least 501,985 unique IP addresses connected to Defendants' IKS servers.  (*See id.*, Ex. 23.)

Nagravision requests statutory damages of $200 under the DMCA – the statutory minimum – for each of these end users to whom Defendants provided their IKS services, thereby facilitating the end users to circumvent the Nagravision security technology.  The plain language of the DMCA authorizes a separate award of statutory damages "per act of circumvention, … product, … offer, or performance of service."  17 U.S.C. § 1203(c)(3)(A).  Consequently, in similar cases involving products or services provided over the Internet in violation of the DMCA, statutory damages have been awarded for each of the defendant's users.  *See, e.g., Blizzard Entm't, Inc. v. Reeves*, No. CV 09-7621 SVW (AJWx), 2010 WL 4054095, at *3 (C.D. Cal. Aug. 10, 2010) (granting default

judgment and awarding statutory damages of more than $85 million under the DMCA, calculated at $200 per user); *Nexon Am. Inc. v. Kumar*, No. 2:11-cv-06991-ODW(PJWx), 2012 WL 1116328, at *6 (C.D. Cal. Apr. 3, 2012) (granting default judgment and awarding statutory damages of $200 per user under the DMCA).[2]

For purposes of calculating statutory damages, it is appropriate to find that each unique IP address identified through the limited discovery conducted by Nagravision represents a separate end user to whom Defendants provided their IKS services. *See Reeves*, 2010 WL 4054095, at *3 (finding that defendant provided its infringing products or services to at least 427,393 users based on evidence showing this number of members in the "community" section of defendant's website); *see also Nexon*, 2012 WL 1116328, at *6 ("[T]he Court does not quibble with Plaintiff's premise that the number of UMaple users is a reasonable approximation of the minimum number of DMCA violations Defendants committed, especially in light of 'the potential difficulty Plaintiff faces in calculating the number of "acts of circumvention" performed on Defendant's servers.'") (quoting *Reeves*). Therefore, Nagravision should be awarded $100,397,000 (501,985 unique IP addresses multiplied by the DMCA statutory minimum of $200) as damages for Defendants' acts of creating and operating an IKS service within the United States, whose only purpose is to enable end users to circumvent Nagravision's security technology deployed in Latin America.

The second aspect of Nagravision's request for statutory damages is based on Defendants manufacturing, importing, and distributing Limesat and Captiveworks receivers in violation of the DMCA. Defendants' Limesat and Captiveworks receivers are designed and used to circumvent the Nagravision security technology that protects the broadcasts of Nagravision's pay-television customer in the United States. Nagravision requests minimum statutory damages of $200 under

---

[2] Also analogous are several cases in which Nagravision's customer in the United States, DISH Network, was awarded statutory damages under the DMCA based on the number of users that downloaded piracy-enabling software files the defendant posted on the Internet. *See, e.g., DISH Network L.L.C. v. Bender*, No. 3:11-cv-00312-bbc, Dkt. 43 (W.D. Wis. Aug. 24, 2011); *DISH Network L.L.C. v. Bagdasaryan*, No. 2:09-cv-03351-RBL-PLA, Dkt. 62 (C.D. Cal. Dec. 16, 2010); *DISH Network L.L.C. v. Ward*, No. 8:08-cv-590-T-30TBM, Dkt. 77 (M.D. Fla. Jan. 8, 2010).

the DMCA for each of Defendants' Limesat and Captiveworks receivers.  Statutory damages were awarded in analogous cases for each unauthorized receiver trafficked in by the defendant.  *See, e.g., Sonicview*, 2012 WL 1965279, at *12 (awarding $200 per product under the DMCA, for total of approximately $65 million); *Viewtech*, 2011 WL 1522409, at *3 ($200 per product, for total of nearly $215 million).

The importation and shipping records available to Nagravision establish that Defendants trafficked in at least 7,274 Limesat and Captiveworks receivers.  (*See* Metral Decl. ¶¶ 28-31, Exs. 25-31.)  Accordingly, Nagravision should be awarded damages in the amount of $1,454,800 (7,274 receivers multiplied by the $200 minimum) for Defendants' acts of manufacturing, importing, and distributing Limesat and Captiveworks receivers in violation of the DMCA.  When added to the $100,397,000 in statutory damages that arise from Defendants' independent acts of creating and operating an IKS service, set forward above, Nagravision should receive a total award in this case of $101,851,800.  That amount is reasonable and conservative for several reasons.

*First*, Nagravision does not seek damages for Defendants' violations of section 605(e)(4) of the FCA.  Statutory damages for violations of section 605(e)(4) are more substantial than under the DMCA and range from $10,000 to $100,000 per product.  *See* 47 U.S.C. §§ 605(e)(3)(C)(i)(II), (e)(4).  Other courts have awarded statutory damages for each violation of section 605(e)(4) when entering default judgment in analogous cases.  *See DISH Network L.L.C. v. Dillion*, No. 3:12-cv-00157-CAB-KSC, Dkt. 47 at 6:18-23 (S.D. Cal. Oct. 15, 2012) ($100,000 per violation, for a total award of $12 million); *DISH Network L.L.C. v. Whitcomb*, No. 3:11-cv-0333 W (RBB), Dkt. 17 at 5:9-23 (S.D. Cal. July 18, 2011) ($10,000 per violation, for a total award of $14.4 million); *see also DirecTV, Inc. v. Hendrix*, No. C-040370, 2005 WL 757562, at *5-6 (N.D. Cal. Apr. 1, 2005) ($10,000 per violation, and citing several cases approving that amount in a default judgment).

*Second*, the $200 per violation requested by Nagravision is at the very bottom end of the DMCA's damages range.  *See* 17 U.S.C. § 1203(c)(3)(A) (allowing $200 to $2,500 per violation). District courts applying the DMCA have "wide discretion in determining the amount of statutory

damages to be awarded, constrained only by the specified maxima and minima." *Viewtech*, 2011 WL 1522409, at *3 (quoting *Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336 (9th Cir. 1990)).  When fixing the amount of damages to be awarded for each violation, the willfulness of the conduct and need for deterrence may be considered.  *See Sony Computer Entm't Am., Inc. v. Filipiak,* 406 F. Supp. 2d 1068, 1074-75 (N.D. Cal. 2005).  For purposes of section 1201(a)(2), "willful" means acting with knowledge that the product or service at issue is designed or used for circumvention.  *See id.* at 1075 (citing *Dolman v. Agee*, 157 F.3d 708, 715 (9th Cir. 1998)).

Defendants' violations of the DMCA were willful.  Defendants operated an IKS service by harvesting Nagravision's control words and distributing these control words to end users of their Globalsat, AZAmerica, and NAZABox receivers, through a network of servers which Defendants maintained in the United States.  (*See* Metral Decl. ¶¶ 8-15, 27.)  Defendants' IKS service, and the underlying IKS server technology, is designed to circumvent the Nagravision security system and has no legitimate application.  The Limesat and Captiveworks receivers that are manufactured and imported by Defendants are likewise designed to circumvent the Nagravision security system, as shown by, among other things, the inclusion of Nagravision's proprietary code and other aspects of Nagravision's security technology in these receivers.  (*See id.* ¶¶ 20-27.)  Therefore, Defendants are fully aware that their products and services are designed and used for unlawful circumvention.  The large scale of Defendants' piracy operation – impacting the Nagravision security technology used by its customers in the United States and Latin America – also warrants imposing significant damages from a need for deterrence standpoint.

The $200 per violation sought by Nagravision is therefore conservative.  There are similar cases involving violations of the DMCA where courts have awarded statutory damages in excess of the amount sought here by Nagravision.  *See, e.g., Global Techs.,* No. 2:07-cv-05897-JZ-PLA, Dkt. 279 at 4:5-18 (C.D. Cal. Nov. 5, 2010) (granting summary judgment for DISH Network and awarding $626.26 million calculated at $2,500 for each DMCA violation); *Tracfone Wireless, Inc. v. SND Cellular, Inc.,* 715 F. Supp. 2d 1246, 1261 (S.D. Fla. 2010) (granting default judgment and

awarding $11.3 million, assessed at $2,500 for each DMCA violation); *Tracfone Wireless, Inc. v. Pak China Group Co.*, 843 F. Supp. 2d 1284, 1301 (S.D. Fla. 2012) (same, for a combined award of $40.2 million).

*Third*, the number of DMCA violations attributed to Defendants is based upon the limited discovery obtained in this case and the import data and shipping records available to Nagravision. Defendants must have provided their IKS services to more than the 501,985 end users identified in the connection traffic that Nagravision acquired through non-party discovery. That connection traffic pertained to only 3 of the IKS servers operated by Defendants, and encompassed a period of only 48 hours. (*See* Metral Decl. ¶ 16.) Defendants, however, maintained at least 12 separate IKS servers in the United States, some which were in operation for at least 5 months. (*See id.* ¶¶ 12, 16, Exs. 1-6 [demonstrating certain authentication and control word servers were detected by Nagravision in October 2014 and remained in operation when connection traffic was captured in March 2015].) Defendants' default effectively precluded Nagravision from quantifying the total number of end users to whom Defendants provided their IKS services.

Likewise, the total number of Limesat and Captiveworks receivers imported by Defendants is unknown. The Limesat receivers underlying Nagravision's request of damages are reflected in records obtained during discovery in a case previously filed against one of Defendants' distributors in the United States. (*See* Metral Decl. ¶ 28.) The records show that Defendants delivered Limesat receivers to this distributor by both air and vessel shipments. (*See id.* ¶¶ 28-29, Exs. 25-28.) As to the Captiveworks receivers, Nagravision used a subscription database to quantify the number of receivers imported by Defendants, but that database only identifies shipments by vessel. (*See id.* ¶ 29.) Given the limited scope of this information, and because Defendants chose to default rather than defend this case, the total number of Limesat and Captiveworks receivers that were imported and distributed by Defendants cannot be quantified.

*Finally*, Nagravision is not requesting an award of attorneys' fees or costs. Fees and costs are mandatory under the FCA, and may be awarded under the DMCA in the Court's discretion.

*See* 47 U.S.C. § 605(e)(3)(B)(iii); 17 U.S.C. § 1203(b)(4)-(5).  Consequently, additional monetary relief is available to Nagravision, but such relief is not being requested in the final judgment.

For the foregoing reasons, awarding Nagravision statutory damages in the sum of $200 for each of the 509,259 violations committed by Defendants, for a total of $101,851,800, is appropriate in this case.  Defendants should be held jointly and severally liable for the damages awarded.

**C.      Defendants' Unauthorized Receivers Should Be Impounded And Destroyed**

The DMCA authorizes courts to impound, "at any time while an action is pending, . . . any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation."  17 U.S.C. § 1203(b)(2).  The DMCA also authorizes courts, "as part of a final judgment or decree finding a violation, [to] order the remedial modification or the destruction of any device or product involved in the violation that is in the custody or control of the violator or has been impounded."  *Id.* § 1203(b)(6).

As established above, Defendants manufacture and distribute several different brands of unauthorized receivers containing Nagravision's proprietary code and other decryption technology taken from the Nagravision security system, and that such articles are involved in violations of the DMCA.  (*See supra* Part IV.A.1-2.)  Therefore, the Court should enter an order requiring that these unauthorized receivers, and any source code or other components of the receivers that incorporate Nagravision's security technology, be turned over to Nagravision for impoundment and controlled destruction.  *See Sonicview*, 2012 WL 1965279, at *14 (ordering the destruction of receivers and related products under DMCA) (citing *Autodesk, Inc. v. Flores*, No. 10-cv-0917-LHK, 2011 WL 337836, at *11 (N.D. Cal. Jan. 31, 2011)); *Noxon*, No. 8:14-cv-01876-DOC-AN, Dkt. 43 at 2:13-25 (ordering impoundment and destruction of unauthorized receivers as part of default judgment); *Dillion*, No. 3:12-cv-00157-CAB-KSC, Dkt. 47 at 7:4-17 (entering default judgment and ordering impoundment of various devices containing software used in circumventing security measures or decrypting television broadcasts without authorization); *Whitcomb*, No. 11-CV-0333 W (RBB),

Dkt. 17 at 8:18-9:5 (entering default judgment and ordering destruction of all devices designed to connect to IKS servers).

**D.     Nagravision Should Be Awarded A Permanent Injunction**

The DMCA and FCA authorize courts to grant permanent injunctions on reasonable terms to prevent or restrain a violation.  17 U.S.C. § 1203(b)(1); 47 U.S.C. 605(e)(3).  In order to obtain a permanent injunction, Nagravision must show:  "(1) actual success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to him outweighs the threatened injury to defendants; and (4) that the injunction does not harm the public interest."  *Gardner v. City of Houston*, No. H-12-1612, 2013 WL 4042022, at *8 (S.D. Tex. Aug. 6, 2013) (citing *Harris County, Texas v. CarMax Auto Superstores, Inc.,* 177 F.3d 306, 312 (5th Cir.1999)).  Nagravision's success on the merits of its DMCA and FCA claims has been established above.  (*See supra* Part IV.A.1-2.)  The remaining requirements for permanent injunctive relief are also satisfied.

**1.     Nagravision Is Suffering Irreparable Harm That Will Not Be Corrected With Monetary Damages Alone**

The Fifth Circuit recognizes that reputational injury and lost profits which are difficult to calculate each constitute irreparable harm.  *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (finding irreparable harm based upon potential damage to reputation); *Fl. Businessmen v. City of Hollywood*, 648 F.2d 956, 958 n.2 (5th Cir. 1981) ("A substantial loss of business may amount to irreparable injury if the amount of lost profits is difficult or impossible to calculate."); *see also Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989) ("We have recognized that a finding of irreparable harm is appropriate even where economic rights are involved when the nature of those rights makes 'establishment of the dollar value of the loss ... especially difficult or speculative.'") (citations omitted).

Nagravision provides security technology that protects the broadcasts of its pay-television customers.  (*See* Metral Decl. ¶¶ 3-7.)  Each year Nagravision invests millions of dollars in this

14

security technology.  (*See id.* ¶¶ 32-33.)  Defendants, by providing unauthorized receivers and IKS services that circumvent these security measures, undermine Nagravision's investment and create the need for costly security updates.  (*See id.*)   For example, IKS piracy is designed to circumvent the "Nagra 3" security technology, which had an estimated cost of over $100 million and required a substantial period of time to implement among Nagravision's customers.  (*See id.*)  Nagravision also continually develops and releases anti-piracy countermeasures as part of the satellite signals transmitted by its pay-television customers, at significant expense, in order to prevent end users from intercepting those broadcasts.  (*See id.*)  Dividing these anti-piracy costs among Defendants and other persons that are engaged in or facilitating the circumvention of Nagravision's security technology is impractical as the exact number of persons involved and full extent of each person's involvement is unknown.  (*See id.*)

Equally serious is the reputational damage and lost business opportunities experienced by Nagravision.  Nagravision's reputation is built on and depends on the delivery of secured content. (*See id.* ¶ 34.)  Piracy harms Nagravision's business reputation and interferes with its contractual and prospective business relationships, including relationships with pay-television broadcasters and other customers for security system solutions.  (*See id.*)  Calculating the reputational damage and lost sales due to this impact is inherently difficult, if not impossible.  (*See id.*)  Such injuries constitute irreparable harm.  *See DISH Network LLC v. Dillion*, No. 12cv157 BTM(NLS), 2012 WL 368214, at *4 (S.D. Cal. Feb. 3, 2012) (finding pay-television piracy caused irreparable harm because "[i]t would be very difficult to quantify Plaintiffs' lost revenues and reputational damage and make Plaintiffs whole"); *Macrovision v. Sima Prods, Corp.*, No. 05 Civ. 5587 (RO), 2006 WL 1063284, at *3 (S.D.N.Y. Apr. 20, 2006) ("If [plaintiff] is unable to prevent the circumvention of its technology, its business goodwill will likely be eroded, and the damages flowing therefrom extremely difficult to quantify.").

Lastly, Defendants may not be financially able to compensate Nagravision for the damages caused to date or losses incurred in the future, and therefore Defendants' unlawful conduct causes

irreparable harm to Nagravision for which money damages alone are not an adequate remedy. *See Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 273 (5th Cir. 2014) (holding district court had discretion to consider the "substantial probability that [plaintiff] would be unable to collect a judgment against [defendant]" when finding irreparable harm); *Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650, 658 (5th Cir. 2000) ("There is some authority … for the proposition that an inability to actually collect on a money judgment may suffice to make an injury irreparable."); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1217 (C.D. Cal. 2007) ("Because it is extremely unlikely that [defendant] will be able to compensate Plaintiffs monetarily for the infringements it has induced in the past, or the infringements it could induce in the future … , Plaintiffs have and will continue to suffer irreparable harm.").

### 2.   The Balance Of Hardships And Public Interest Favor Injunctive Relief

Nagravision will be irreparably harmed without an injunction for all the reasons above.  In contrast, the burden placed on Defendants by an injunction consists only of the cost of foregoing unlawful conduct, which should not be accorded any weight in an equitable balancing of factors. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1110 n.12 (5th Cir. 1991) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration.") (quoting *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988)); *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) (finding profits lost from the enjoined sale of infringing goods is not recognizable harm); *Apple Computer*, *Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (holding injunction may issue despite the potentially "devastating effect" on the defendant's business because an infringer is not "permitted to construct its business around its infringement" in the first place).  Accordingly, the balance of equities favors granting the injunction requested by Nagravision.

Likewise, it is beyond debate that the public interest is served by enjoining activities that violate federal law. *See Dillion*, 2012 WL 368214, at *5 ("[T]he public has a strong interest in the

16

enforcement of anti-piracy legislation."). Permanently enjoining Defendants will serve the public interest by upholding copyright protections and advancing the underlying goals of copyright law to "prevent[] the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer*, 714 F.2d at 1255. The public does not, however, receive any benefit from allowing Defendants to continue providing their infringing products and services. *See Grokster*, 518 F. Supp. 2d at 1223 ("Certainly, the public does not benefit from … inducement of infringement."). Consideration of the public interest favors Nagravision's request for injunctive relief.

### 3.     The Permanent Injunction Must Be Sufficient To Prevent Defendants From Violating Nagravision's Rights

The Court has broad discretion under Fed. R. Civ. P. 65 "to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may be fairly anticipated from the defendant's conduct in the past." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990) (quoting *N.L.R.B. v. Express Publ'g Co.*, 312 U.S. 426, 435 (1941)). The DMCA and FCA also allow for a permanent injunction on terms the Court finds "reasonable to prevent or restrain" a violation of the statute. 17 U.S.C. § 1203(b)(1); 47 U.S.C. § 605(e)(3)(B)(i).

Defendants have been trafficking in unauthorized receivers and IKS services that are used to circumvent Nagravision's security technology and steal the television programming provided by customers of Nagravision. (*See supra* Part IV.A.1-2.) Therefore, Nagravision requests an order permanently enjoining Defendants, and any other person acting in active concert or participation with Defendants that receives actual notice of the order, from:

1.     Manufacturing, importing, assembling, selling, distributing, offering to the public, providing, or trafficking in: (a) any product, technology, or service used in acquiring or distributing Nagravision's control words; (b) Limesat receivers; (c) Captiveworks receivers; or (d) any other service, technology, product, equipment, device, component, or part thereof that:

17

(i).     is primarily designed or produced for circumventing Nagravision's security system or any other technological measure deployed by Nagravision that controls access to, copying, or distribution of copyrighted works;

(ii).     has only a limited commercially significant purpose or use other than to circumvent Nagravision's security system or any other technological measure deployed by Nagravision that controls access to, copying, or distribution of copyrighted works;

(iii).     is marketed for use in circumventing Nagravision's security system or any other technological measure deployed by Nagravision that controls access to, copying, or distribution of copyrighted works; or

(iv).     is primarily of assistance in the unauthorized decryption of direct-to-home satellite services protected by the Nagravision security technology.

2.     Receiving or assisting others in receiving Nagravision's control words or satellite transmissions of television programming protected by Nagravision's security technology without authorization.

Permanent injunctions were entered in analogous cases filed against defendants trafficking in unauthorized receivers and related products on essentially the same terms. *See, e.g., Sonicview*, 2012 WL 1965279, at *14; *Viewtech*, 2011 WL 1522409, at *4.

Defendants, however, are not simply trafficking in unauthorized receivers – as established above, they are also operating an IKS service.  Defendants have a history of relocating their IKS service to alternative servers whenever confronted with legal action by Nagravision.  At the time this action was filed, on December 11, 2014, Nagravision identified 12 servers in the United States that were used as either control word servers or authentication servers in Defendants' IKS service. (*See* Metral Decl. ¶ 12.)  Defendants later relocated their IKS service in large part to a different set of servers.  (*See id.* ¶¶ 17-18.)  Notably, this may not be the first time that Defendants moved their IKS service to new servers.  One of the unauthorized receivers at issue previously connected to servers located in Canada to acquire Nagravision's control words.  (*See id.* ¶ 19.)  The unauthorized

18

receiver migrated to the United States-based servers identified in Nagravision's complaint not long after Nagravision obtained orders from the Superior Court in Montreal, Canada requiring the ISP to provide discovery and shutdown the Canadian servers.  (*Id.*)  If history repeats itself, Defendants will transition their IKS service to new servers and continue operating once enjoined in this case.

Accordingly, the permanent injunction must apply to any person that provides web, server, domain registration, file hosting, or content delivery network services that are used by Defendants in connection with the activities enjoined above and that receives actual notice of the Court's order. *See China Cent. Television v. Create New Tech. (HK) Ltd.*, No. 2:15-cv-01869-SVW-AJW, Dkt. 192 at 9:7-10:13 (C.D. Cal. May 31, 2016) (permanently enjoining numerous categories of non-parties from providing services to defendants that illegally transmitted copyrighted works over the Internet, including ISPs hosting the servers used by defendants); *Dillion*, 2012 WL 368214, at *6 (entering injunction requiring "all website hosting, website optimization, and any other company or person that provides website services for the MFN domains … [to] cease all website services made in connection with the MFN domains"); *see also Arista Records, LLC v. Tkach*, No. 15-cv-3701(AJN), 122 F. Supp. 3d 32, 36-38 (S.D.N.Y. 2015) (holding non-party ISPs must comply with injunction, finding "courts that have addressed comparable technological services have similarly held that they fall within an injunction's reach if those services are knowingly used to facilitate injunction violations") (citing cases).

Finally, the Court should order the transfer of the domain names through which Defendants conduct their business, which as demonstrated above is centered on operating an IKS service and producing the corresponding set-top boxes that circumvent Nagravision's security technology and steal television programming provided by Nagravision's customers.  The domain names at issue are *www.gotechcn.com* and *www.goosat.com*.  (Metral Decl. ¶ 14, Exs. 20, 22.)  The Court should order the registries and registrars holding or listing *www.gotechcn.com* and *www.goosat.com*, upon receiving actual notice of this Court's order, to disable and transfer the domain names to the control of Nagravision.  *See Dillion*, No. 3:12-cv-00157-CAB-KSC, Dkt. 47 at 6:24-26 (ordering transfer

of domain names involved in defendants' distribution of piracy devices as part of default judgment and permanent injunction); *Bolanos*, 2012 WL 5896599, at *2 (same); *China Cent. Television*, No. 2:15-cv-01869-SVW-AJW, Dkt. 192 at 10:14-23 (ordering registrars and registries to disable and transfer the domain names used by infringer when granting default judgment).  The foregoing may provide a more effective means of shutting down Defendants' illegal piracy operation than chasing after ever-changing ISPs and server IP addresses.

## V.      CONCLUSION

For the foregoing reasons, the Court should grant this motion for default judgment against Defendants, award statutory damages to Nagravision in the amount of $101,851,800, and enter a permanent injunction and order requiring the impoundment and destruction of Defendants' piracy devices and transfer of Defendants' domain names as set forth above.  A proposed form of order has been submitted with this motion.

Dated:  July 11, 2016

Respectfully submitted,

**HAGAN NOLL & BOYLE, LLC**

s/ Timothy M. Frank (with permission)
Chad M. Hagan (attorney-in-charge)
Texas Bar #24036700
S.D. Tex. Bar #36439
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone:  (713) 343-0478
Facsimile:  (713) 758-0146
chad.hagan@hnbllc.com

Timothy M. Frank (of counsel)
Texas Bar #24050624
S.D. Tex. Bar #614705
timothy.frank@hnbllc.com

Attorneys for Plaintiff Nagravision SA